IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| PALEKAIKO BEACHBOYS CLUB, INC., and THOMAS JOHN COPP,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF HONOLULU,<br><br>Defendant. | Case No. 21-cv-00500-DKW-KJM<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND** |

In the Complaint, Plaintiffs allege that various local ordinances and/or permitting decisions relating to peddling and operating beach stand concessions at Kuhio Beach Park in Waikiki unconstitutionally infringe upon their rights to free speech, equal protection, and due process. In its motion to dismiss, the City and County of Honolulu defends those ordinances and decisions, arguing that "[m]ost, if not all," of Plaintiffs' claims are time-barred or, alternatively, fail to state a claim.

Having reviewed the parties' briefing, the Court agrees that almost all of Plaintiffs' claims must be dismissed because they are time-barred in light of the allegations in the Complaint. One claim, however, was not addressed in Defendant's motion to dismiss, and the Court declines to consider any related arguments that were not raised until the reply. The Court also finds that leave to amend Plaintiffs' dismissed claims is appropriate. Therefore, as more fully

explained below, the motion to dismiss, Dkt. No. 10, is GRANTED IN PART and DENIED IN PART with leave to amend.

## RELEVANT FACTUAL BACKGROUND

The following relevant facts are alleged in the Complaint.  In 1994, Plaintiff Palekaiko Beachboys Club, Inc. (Palekaiko) was formed as a 501(c)(4) membership organization to perpetuate the historical and cultural traditions of the Hawaiʻi beachboy.  Compl. at ¶ 16, Dkt. No. 1.  The Hawaiʻi beachboys' historical roots are connected to a section of Waikiki Beach where two surf breaks favored by ancient Hawaiians are located.  *Id*. at ¶ 3.  The two surf breaks have significant cultural ties to the Ka Pohaku Kahuna Kapaemahu healing stones (Healing Stones) and the Duke Kahanamoku Statue (Duke Statue), both of which are located within Kuhio Beach Park (KBP).  *Id*. at ¶ 5.  In fact, the Complaint describes the Healing Stones and Duke Statue as the "cultural heart" of Waikiki.  *Id*. at ¶ 7.  Access to the surf breaks is crucial to the preservation of the Hawaiʻi beachboy traditions.  *Id*. at ¶ 4.

Palekaiko seeks to access KBP near the Healing Stones and Duke Statue for the purpose of bringing public awareness to its mission by distributing educational and informative reading materials, soliciting and signing up memberships, requesting charitable donations, and by giving away and/or selling message-bearing merchandise.  *Id*. at ¶ 17.

Beachboy concessions at KBP began in 1985 when three revocable permits were issued to "old-time" beachboys. *Id*. at ¶ 8. According to the Complaint, three beach service concessions are eligible to operate at KBP near the Healing Stones and Duke Statue. *Id*. at ¶ 19.

In 1991, the City and County of Honolulu (Honolulu) passed an ordinance related to the awarding of concessions on Honolulu property to nonprofit beachboys. *See id*. at ¶ 10; Rev. Ord. Honolulu (ROH) § 28-3.3(e). Also in 1991, the State of Hawaiʻi exempted from bidding concessions on public property that were set aside for, *inter alia*, "beach service association[s] dedicated to the preservation of the Hawaii beach boy tradition…." *See* Compl. at ¶ 11; Haw. Rev. Stat. § 102-2(b)(8).

On October 28, 1991, Honolulu's Director of Parks and Recreation (Parks Director) adopted Rules and Regulations Relating to Beachboy Concessions. Compl. at ¶ 59. In 1993, Hawaiʻi Beachboys Services Association, a nonprofit beachboy association, was awarded the nonprofit beachboy concession pursuant to ROH Section 28-3.3(e) (Section 28-3.3(e)). *Id*. at ¶ 60. In February 1994, the Parks Director issued a letter stating that the Department of Parks and Recreation intended to award no more than three "non-bid" concessions to nonprofit beachboy associations at KBP. *Id*. at ¶ 62. In March 1999, Honolulu issued a call for bids and awarded contracts to two for-profit beach service concessions and one nonprofit

3

beachboy concession at KBP, all of which were located near the Healing Stones and Duke Statue.  *Id*. at ¶ 63.

In 2003, rulemaking authority was transferred from the Department of Parks and Recreation to the Department of Budget and Fiscal Services (DBFS).  *Id*. at ¶ 65.  On October 12, 2004, the DBFS adopted administrative rules for the "Award of Beach Services Concession To A Registered Nonprofit Beach Boy Association."  *Id*. at ¶ 68 (quotation omitted).  Honolulu's current practice for awarding nonprofit beachboy concessions is administered by the DBFS and requires a two-step process.  *Id*. at ¶ 22.  The first step requires submission of an application deposit and meeting certain "mandatory" minimum qualifications.  *Id*. at ¶ 23.  The second step involves qualified applicants participating in a "lottery" that determines−by the drawing of lots−which applicant receives a contract to operate a nonprofit beachboy concession.  *Id*. at ¶ 24.  Alternatively, a nonprofit beachboy association may bid for a spot as a "for-profit" concession.  *Id*. at ¶ 25.

Honolulu has allowed "non-exempt" organizations to participate in the lottery for nonprofit beachboy concessions and awarded a contract to a nonprofit organization whose mission did not include preserving the beachboy tradition.  *Id*. at ¶ 31.  Honolulu does not require other nonprofit concessionaires to meet financial requirements.  *Id*. at ¶ 42.

From 1999-2005, Palekaiko was the concessionaire for the "nonprofit beachboys concession stand #2" at KBP, which was located near the Healing Stones and Duke Statue. *Id*. at ¶ 70. From September 2005 until 2011, Honolulu did not award a nonprofit beachboy concession contract. *Id*. at ¶ 71. Since 2005, Honolulu has not provided for another nonprofit beachboy concession, pursuant to Section 28-3.3(e), near the Healing Stones and Duke Statue. *Id*. at ¶¶ 70-71. In Spring 2007, Honolulu "dismantled" the nonprofit beachboy concession stand #2. *Id*. at ¶ 72. In 2011, Honolulu decided that the nonprofit concession would be located at the Kapahulu Groin, which is "approximately one-quarter mile away from the Healing Stones and Duke Statue." *Id*. at ¶ 74.

In January 2011, Palekaiko's Acting Executive Director, Plaintiff Tom Copp (Copp), was cited for distributing a "commercial handbill" within KBP. *Id*. at ¶¶ 45, 73. Fearing arrest, Copp subsequently stopped handbilling within KBP. *Id*. at ¶ 73. In July 2019, though, Copp was cited for peddling without a permit within KBP. *Id*. at ¶ 81. In November 2019, he was fined $100 for this offense. *Id*. According to the Complaint, "numerous unauthorized peddlers" have also violated the peddling ordinances over the past three years. *Id*. at ¶ 82.

In December 2017, Honolulu solicited bids for two for-profit concessions at KBP. *Id*. at ¶ 75. In May 2018, the winning bidder, Dive Oahu, commenced a

contract for two for-profit and two "auxiliary" stands. *Id*. Since 2018, only Dive Oahu has operated a concession at the "cultural heart" of Waikiki. *Id*. at ¶ 76.

In 2020, Honolulu awarded a revocable permit under Hawai'i Revised Statutes (HRS) Section 102-2(b)(7) to Pacific Island Beachboys, a nonprofit organization, for one year. *Id*. at ¶¶ 38, 77. Honolulu did so without following the framework of ROH Section 28-3.3(e) and without public notice or a call for applicants. *Id*. at ¶¶ 38-39. This concession is located far from the Healing Stones and Duke Statue. *Id*. at ¶ 77. Only Dive Oahu and Pacific Island Beachboys are currently operating at KBP. *Id*. at ¶ 78. To date, Honolulu has not offered another solicitation for a nonprofit beachboy concession under Section 28-3.3(e). *Id*.

## PROCEDURAL BACKGROUND

Plaintiffs Palekaiko and Copp (collectively, Plaintiffs) initiated this action with the filing of the Complaint on December 20, 2021. Dkt. No. 1. Therein, Plaintiffs assert claims that their rights to free speech, equal protection, and due process have been violated.

On January 18, 2022, Honolulu filed a motion to dismiss the Complaint, Dkt. No. 10, arguing that Plaintiffs' claims are time-barred or fail to state a claim. On February 18, 2022, Plaintiffs filed an opposition to the motion to dismiss, Dkt. No. 24, and, a week later, Honolulu replied, Dkt. No. 25. This Order follows.

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8(a)(2). *Id.* at 679.

When a complaint fails to state a plausible claim, leave to amend should be given when "justice so requires." Fed.R.Civ.P. 15(a)(2). Justice does not require

leave to amend when (1) it would prejudice an opposing party, (2) it is sought in bad faith, (3) it would produce an undue delay in litigation, (4) it would be futile, or (5) there has been repeated failure to cure a deficiency.  *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008); *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

## DISCUSSION

As mentioned, in the Complaint, Plaintiffs allege that their rights to free speech, equal protection, and due process have been violated.  The Court addresses each claim in turn.

**I.      Free Speech**

Plaintiffs allege that Honolulu has violated their free speech rights by (1) failing to comply with the "special conditions" of Section 28-3.3(e) and, instead, requiring proof of financial ability and participation in a lottery, (2) granting beachboys access to KBP pursuant to HRS Section 102-2(b)(7), (3) limiting the number of nonprofit beachboy concessions and "relegating" the same to locations away from the "cultural heart" of Waikiki, and (4) prohibiting Palekaiko from engaging in activities at KBP pursuant to Honolulu's peddling ordinances.  Compl. at ¶¶ 86-90.

In its motion to dismiss, Honolulu begins by arguing that "[m]ost, if not all," of these claims are untimely.  Dkt. No. 10-1 at 5.  More specifically, Honolulu

observes that the Complaint was filed on December 20, 2021, and, thus, any claim must have accrued within two years of that date to be timely. Honolulu argues that this is something the Complaint fails to allege, given that the relevant ordinances and concession awards occurred well before that time. Plaintiffs, in contrast, argue that their claims are timely because Honolulu's actions constitute "continuing violations" of their rights. Dkt. No. 24 at 8-9.

In large part, but not in their entirety, the Court agrees with Honolulu that Plaintiffs' free-speech claims are time-barred. First, absent any intervening doctrine, on the face of the Complaint, most of Plaintiffs' free speech claims are clearly time-barred. As mentioned, the Complaint was filed on December 20, 2021. This means, as Honolulu contends and Plaintiffs do not dispute, that Plaintiffs' claims need to have accrued on or after December 20, 2019. *See* Dkt. No. 10-1 at 5; Dkt. No. 24 at 8-9; *Bird v. Dep't of Human Servs.*, 935 F.3d 738, 743 (9th Cir. 2019). The principal thrust of Plaintiffs' free-speech claim is that Honolulu has failed to follow the "special conditions" of Section 28-3.3(e) when awarding nonprofit beachboy concessions at KBP. Although the Complaint is far from a model of clarity, at best, it alleges that this last occurred in either 2005 or 2011. *See* Compl. at ¶¶ 71, 74. The same is true of the claim that Honolulu has "relegated" nonprofit concession stands to areas away from the "cultural heart" of Waikiki, *see id*. at ¶ 74, and the claim that Honolulu has limited the number of

9

nonprofit beachboy concessions. *See id*. at ¶¶ 71-72, 75. Finally, while at least one alleged instance of the enforcement of Honolulu's peddling ordinances is closer in time to the accrual deadline, it too is untimely, given that it took place in *July 2019*. *See id*. at ¶ 81.

Therefore, on the face of the Complaint, the majority of Plaintiffs' free-speech claims are untimely. *See Bird*, 935 F.3d at 743 (explaining that, under federal law, "a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.") (quotation omitted).[1] Plaintiffs argue otherwise, contending that the "continuing violations" doctrine saves their claims, citing *Bird* and *Flynt v. Shimazu*, 940 F.3d 457 (9th Cir. 2019). In *Bird*, however, the Ninth Circuit explained that "little remains of the continuing violations doctrine." 935 F.3d at 748.[2] Moreover, *Flynt* is inapposite. There, the Ninth

---

[1] There is, however, one outlier: Plaintiffs' claim that using HRS Section 102-2(b)(7) to grant beachboys access to KBP violates their right to free speech. The reason is that, in the motion to dismiss, Honolulu fails to address this claim at all, *see* Dkt. No. 10-1 at 5-6, which is noticeable not the least because the alleged event underlying this claim took place in *2020*, which would be *within* the two-year limitations period even if it took place on the first day of that year. Honolulu also fails to address this claim on the merits. *See generally* Dkt. No. 10-1. Thus, while Honolulu attempts to address the claim, for the first time, in its reply, *see* Dkt. No. 25 at 8-10, the Court declines to consider those arguments and allows this claim to proceed whether or not Plaintiffs file an amended complaint. *See* Local Rule 7.2 ("Any argument raised for the first time in the reply shall be disregarded.").

[2] To the extent the doctrine could still apply here, the Ninth Circuit further explained that the "essence" of the doctrine was that an action could be timely "so long as the last act evidencing the continuing practice falls within the limitations period[.]" *Id*. at 746. Here, of all the acts alleged in the Complaint, there is but one that falls within the limitations period−the award of a revocable permit under HRS Section 102-2(b)(7). As noted earlier, while that discrete act may be able to save a discrete claim from being time-barred, it alone cannot save the entirety of the other acts alleged in the Complaint, not the least because it is not the last act of a "continuing practice…."

Circuit concluded that the existence of allegedly unconstitutional statutes and the "realistic threat of future enforcement" every two years of the same rendered claims timely. *Flynt*, 940 F.3d at 464. Here, there are no such allegations of the realistic threat of future enforcement.[3]

In this light, except with respect to Plaintiffs' free-speech claim premised upon the issuance of revocable permits under HRS Section 102-2(b)(7), their free-speech claims are subject to dismissal for failure to state a claim. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (explaining that a claim can be dismissed under Fed.R.Civ.P. 12(b)(6) on statute of limitations grounds when "the running of the statute is apparent on the face of the complaint.") (quotation omitted). However, because it is possible for Plaintiffs to cure this deficiency, the Court will grant leave to amend their free-speech claim. *See id*. (explaining that leave to amend should be granted when it is not clear that a complaint "could not be amended" to cure a limitations deficiency).

---

Rather, at best, the Complaint alleges that Honolulu has engaged in different practices in infringing Plaintiffs' rights.

[3]This is so even of the peddling ordinances, which, as alleged, have been enforced twice in a decade against Copp. In *Flynt*, the "realistic threat" of future enforcement arose because State law required the plaintiffs to renew their gambling licenses every two years. *See Flynt*, 940 F.3d at 459, 463. No such "realistic threat" has been alleged here.

## II. <u>Equal Protection</u>

Plaintiffs allege that they have been deprived of equal protection because (1) Honolulu's peddling ordinances have been unequally enforced, and (2) they have been treated differently compared to "similarly situated exempt nonprofits" operating on Honolulu park property. Compl. at ¶¶ 93-94.

In its motion to dismiss, Honolulu argues that these claims, like Plaintiffs' free-speech claims, are time-barred. Dkt. No. 10-1 at 6. Honolulu further argues, on the merits, that there is a rational basis for the beach stand concession ordinances, and Plaintiffs have failed to allege that the peddling ordinances are selectively enforced. *Id*. at 19-23. While Plaintiffs' opposition, like their Complaint, is far from a model of clarity, they appear to contend that nonprofit beachboy associations are being deliberately treated different than both similar for-profit groups and nonprofit organizations uninvolved in beach stands. Dkt. No. 24 at 19-22. Plaintiffs also appear to assert that Honolulu's peddling ordinances "negatively impact[]" nonprofit enterprises. *Id*. at 21.

The Court agrees with Honolulu that Plaintiffs' equal protection claims should be dismissed. With respect to the peddling ordinances, this equal-protection claim is untimely. As discussed, the Complaint alleges that Copp was cited for violating the same in 2011 and July 2019−both more than two years ago. *Id*. at ¶¶ 73, 81. Further, to the extent the Complaint alleges that other individuals violate

the peddling ordinances but are not cited, which is far from clear, the Complaint appears to allege that such activity has taken place for at least three years. *See id*. at ¶ 82. Therefore, as alleged, this claim is untimely.

As for "similarly situated" nonprofits, although it is not entirely clear, this claim appears to concern the alleged unequal application of Honolulu ordinances, such as Section 28-3.3, by making nonprofit beachboy associations alone meet "minimum financial requirements…." *See id*. at ¶¶ 42, 94. With respect to the timeliness of this claim, the Complaint is again unclear. Initially, the Complaint alleges that the "minimum financial" and lot-drawing requirements went into place in 2004. *Id*. at ¶ 68. Notably, however, although various events and dates are alleged thereafter, there do not appear to be any allegations of when the minimum financial requirements have ever actually been enforced, let alone in the past two years. *See id*. at ¶¶ 70-72, 74-78 (alleging that Palekaiko was the concessionaire from 1999-2005; from 2005 to 2011, Honolulu did not award a nonprofit beachboy concession; in 2011, Honolulu moved the nonprofit beachboy concession to the Kapahulu Groin; in 2017, Honolulu solicited two for-profit beach service concessions; since 2018, only one for-profit entity has operated at the "cultural heart" of Waikiki; and, "[c]urrently," only Dive Oahu and Pacific Island Beachboys,

Inc. are operating at KBP).⁴   To the extent an injury is alleged, though, it is certainly untimely, given that, at best, the last time a nonprofit concession was awarded was in 2011.   *See* Compl. at ¶ 71.

Therefore, Plaintiffs' equal protection claims should be dismissed. Nonetheless, because it is possible that Plaintiffs could cure the deficiencies identified above, the Court will allow leave to amend their equal protection claims.

## III.   Due Process

Plaintiffs allege that they have been denied due process by Honolulu "failing to comply with the special conditions governing the award of nonprofit beachboy concessions" set forth in Section 28-3.3(e).   Compl. at ¶ 95.   Much like the latter equal-protection claim discussed above, this claim is also premised upon Honolulu alleging imposing additional conditions on nonprofit beachboy associations.   The analysis is also much the same.   First, the Complaint does not appear to allege that the additional conditions have ever been imposed.   Second, to the extent the Complaint makes any such allegation, the claim is untimely, given that the additional conditions appear to have been last imposed in 2011, if ever.   Therefore, this claim must too be dismissed, but, like others discussed herein, the Court will allow leave to amend to cure the deficiencies identified.

---

⁴Therefore, arguably, Plaintiffs do not appear to have alleged an injury-in-fact with respect to the minimum financial requirements.   *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (explaining that "[a]n injury sufficient to satisfy Article III must be concrete and particularized and actual or imminent, not conjectural or hypothetical.") (quotation and internal quotation marks omitted).

## **CONCLUSION**

The motion to dismiss, Dkt. No. 10, is GRANTED IN PART and DENIED IN PART.  Specifically, for the reasons set forth herein, all claims are dismissed with leave to amend, except for Plaintiffs' free-speech claim premised upon HRS Section 102-2(b)(7) (Compl. at ¶ 88), which shall be allowed to proceed.  **Plaintiffs may have until March 31, 2022 to file an amended complaint.**  To the extent Plaintiffs file an amended complaint, they must include the above-mentioned free-speech claim therein.  *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) (stating that claims dismissed with prejudice need not be re-alleged in an amended complaint to preserve them for appeal, but claims that are voluntarily dismissed are considered waived if they are not re-pled).[5]

IT IS SO ORDERED.

Dated: March 10, 2022 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

---

[5] Because the Court has found all but one of Plaintiffs' claims to be untimely, at this juncture, the Court declines to address Honolulu's other arguments for dismissal raised in its motion.  Should Honolulu wish to re-raise those other arguments with respect to any amended complaint, they may do so.  The Court notes, however, that many of the more substantive arguments Honolulu advances in its motion rely upon a Declaration of Christopher Ching (Dkt. No. 10-4) that is not mentioned or incorporated by reference in the Complaint and not subject to judicial notice.  Therefore, the Court would not consider any such declaration in ruling on a motion to dismiss.  *See United States v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir. 2003).