IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| PALEKAIKO BEACHBOYS CLUB, INC., and THOMAS JOHN COPP,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF HONOLULU,<br><br>Defendant. | Case No. 21-cv-00500-DKW-KJM<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT** |

On March 10, 2022, the Court entered an Order dismissing Plaintiffs'

Complaint in part with leave to amend.   Specifically, the Court: i) denied

challenges to Plaintiffs' free speech claim premised upon Hawaiʻi Revised Statutes

(HRS) Section 102-2(b)(7); and ii) dismissed with leave to amend every other

claim because it was untimely.

On March 31, 2022, Plaintiffs filed a First Amended Complaint (FAC).   On

April 20, 2022, Defendant City and County of Honolulu moved for dismissal or

summary judgment with respect to all claims therein.

Having reviewed the FAC and the parties' briefing with respect to the pending

motion, the Court again finds that Plaintiffs' previously dismissed claims, to the

extent they are even still asserted as claims, remain time-barred because the relevant

events took place more than two years before the filing of this case.   Notably, the

FAC changes little of the alleged timeline of this case, other than to buttress the timeliness of Plaintiffs' claim premised upon HRS Section 102-2(b)(7), which the Court had already found to be timely.   Therefore, as more fully set forth below, except for the Section 102-2(b)(7) claim, the Court again finds Plaintiffs' claims to be untimely and, because leave to amend has been previously granted, those claims are DISMISSED without further leave to amend.   As for Plaintiffs' Section 102-2(b)(7) claim, as Defendant appears to acknowledge, given its reliance on evidence extraneous to the FAC, it is not possible to assess the merits of the claim without resorting to summary judgment practices.   Having done so, as more fully discussed below, Defendant has failed to show that, at this very early juncture of the case, it is entitled to summary judgment.   Therefore, the motion to dismiss or for summary judgment, Dkt. No. 32, is GRANTED IN PART and DENIED IN PART as set forth below.

## STANDARD OF REVIEW

### I.   Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted."   Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed.R.Civ.P. 8(a)(2).   Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."   *Id.*   Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Id.* (citing *Twombly*, 550 U.S. at 555).   Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.* (citing *Twombly*, 550 U.S. at 556).   Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8(a)(2).   *Id.* at 679.

When a complaint fails to state a plausible claim, leave to amend should be given when "justice so requires."   Fed.R.Civ.P. 15(a)(2).   Justice does not require leave to amend when (1) it would prejudice an opposing party, (2) it is sought in bad faith, (3) it would produce an undue delay in litigation, (4) it would be futile, or (5) there has been repeated failure to cure a deficiency.   *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008); *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

## II.   <u>Motion for Summary Judgment</u>

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   In particular, the movant's "initial responsibility" is to inform the district court of the basis for its motion and to identify those parts of the record "which it believes demonstrate the absence of a genuine issue of material fact."   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   The moving party is then entitled to judgment as a matter of law if the non-moving party fails to make a sufficient showing on an essential element of a claim in the case on which the non-moving party has the burden of proof.   *Id.*   In contrast, when the moving party bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted…."   *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992).   This means that the movant "must establish beyond controversy every essential element" of its claims.   *See S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (quotation omitted).   In assessing a motion for summary judgment, all facts, including disputed facts, are construed in the light most favorable to the non-moving party.   *Nelson v. City of Davis*, 571 F.3d 924, 928 (9th Cir. 2009); *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005).

## **RELEVANT FACTUAL BACKGROUND**

As an initial matter, the Court observes that, in its motion, Defendant moves for dismissal or, alternatively, summary judgment.   The Court also observes that a Federal Rule of Civil Procedure 16 scheduling conference and, thus, presumably, discovery, has yet to occur.   *See* Dkt. No. 38 (re-scheduling said conference to August 1, 2022).   As such, moving for summary judgment at this point could be described as premature.   Nonetheless, in their opposition to the motion, Plaintiffs do not rely on Federal Rule of Civil Procedure 56(d) as a basis to defer ruling on or denying the motion.   Instead, Plaintiffs simply argue that the evidence is disputed.

From this, arises two conclusions.   First, that nearly all of Plaintiffs' claims are untimely *as alleged* in the FAC.   Therefore, in addressing these claims, the Court relies solely on the relevant facts alleged in the FAC, as set forth below in Section I of the Factual Background.   Second, the only claim surviving Defendant's timeliness challenges is Plaintiffs' free speech claim, which is premised upon HRS Section 102-2(b)(7).   Because it is not possible to award Defendant relief on the substance of that claim (if at all) without resorting to extraneous evidence,[1]  the Court sets forth the undisputed facts related to that claim in Section II of the Factual Background.

---

[1]Something that Defendant appears to acknowledge, given that, in challenging the merits of this claim in its motion, Defendant relies solely upon evidence−a Declaration−that is not part of the FAC.   *See* Dkt. No. 32-1 at 16-17 (citing Dkt. No. 33-1).

## I.    <u>Facts Alleged in the FAC</u>

In 1994, Plaintiff Palekaiko Beachboys Club, Inc. (Palekaiko) was formed as a 501(c)(4) membership organization to perpetuate the historical and cultural traditions of the Hawai‘i beachboy.   FAC at ¶ 16, Dkt. No. 31.   The Hawai‘i beachboys' historical roots are connected to a section of Waikiki Beach where two surf breaks favored by ancient Hawaiians are located.   *Id*. at ¶ 3.   The two surf breaks have significant cultural ties to the Ka Pohaku Kahuna Kapaemahu healing stones (Healing Stones) and the Duke Kahanamoku Statue (Duke Statue), both of which are located within Kuhio Beach Park (KBP).   *Id*. at ¶ 5.   In fact, the FAC describes the Healing Stones and Duke Statue as the "cultural heart" of Waikiki. *Id*. at ¶ 7.   Access to the surf breaks is crucial to the preservation of Hawai‘i beachboy traditions.   *Id*. at ¶ 4.

Palekaiko seeks to access KBP near the Healing Stones and Duke Statue for the purpose of bringing public awareness to its mission by distributing educational and informative reading materials, soliciting and signing up memberships, requesting charitable donations, and by giving away and/or selling message-bearing merchandise.   *Id*. at ¶ 17.

Beachboy concessions at KBP began in 1985 when three revocable permits were issued to "old-time" beachboys.   *Id*. at ¶ 8.   According to the FAC, "in

theory," three beach service concessions are eligible to operate at KBP near the Healing Stones and Duke Statue.   *Id*. at ¶ 19.

In 1991, Defendant passed an ordinance related to the awarding of concessions on Honolulu property to nonprofit beachboys.   *See id*. at ¶ 10; Rev. Ord. Honolulu (ROH) § 28-3.3(e).   Also in 1991, the State of Hawaiʻi exempted concessions from bidding on public property that was set aside for, *inter alia*, "beach service association[s] dedicated to the preservation of the Hawaii beach boy tradition…."   *See* FAC at ¶ 11; Haw. Rev. Stat. § 102-2(b)(8).

On October 28, 1991, Honolulu's Director of Parks and Recreation (Parks Director) adopted Rules and Regulations Relating to Beachboy Concessions.   FAC at ¶ 59.   In 1993, Hawaiʻi Beachboys Services Association, a nonprofit beachboy association, was awarded the nonprofit beachboy concession pursuant to ROH Section 28-3.3(e) (Section 28-3.3(e)).   *Id*. at ¶ 60.   In February 1994, the Parks Director issued a letter stating that the Department of Parks and Recreation intended to award no more than three "non-bid" concessions to nonprofit beachboy associations at KBP.   *Id*. at ¶ 62.   In March 1999, Honolulu issued a call for bids and awarded contracts to two for-profit beach service concessions and one nonprofit beachboy concession at KBP, all of which were located near the Healing Stones and Duke Statue.   *Id*. at ¶ 63.

In 2003, rulemaking authority was transferred from the Department of Parks and Recreation to the Department of Budget and Fiscal Services (DBFS). *Id*. at ¶ 65. On October 12, 2004, the DBFS adopted administrative rules for the "Award of Beach Services Concession To A Registered Nonprofit Beach Boy Association." *Id*. at ¶ 68 (quotation omitted). Honolulu's current practice for awarding nonprofit beachboy concessions is administered by the DBFS and requires a two-step process. *Id*. at ¶ 26. The first step requires submission of an application deposit and meeting certain "mandatory" minimum, including financial, qualifications. *Id*. at ¶ 27. The second step involves qualified applicants participating in a "lottery" that determines–by the drawing of lots–which applicant receives a contract to operate a nonprofit beachboy concession. *Id*. at ¶ 28. Alternatively, a nonprofit beachboy association may bid for a spot as a "for-profit" concession. *Id*. at ¶ 29.

Honolulu has allowed "non-exempt" organizations to participate in the lottery for nonprofit beachboy concessions and awarded a contract to a nonprofit organization whose mission did not include preserving the beachboy tradition. *Id*. at ¶ 32.

From 1999-2005, Palekaiko was the concessionaire for the "nonprofit beachboys concession stand #2" at KBP, which was located near the Healing Stones and Duke Statue. *Id*. at ¶ 70. From September 2005 until 2011, Honolulu did not award a nonprofit beachboy concession contract. *Id*. at ¶ 71. Since 2005,

Honolulu has not provided for another nonprofit beachboy concession, pursuant to Section 28-3.3(e), near the Healing Stones and Duke Statue.   *Id*. at ¶¶ 70-71.   In Spring 2007, Honolulu "dismantled" the nonprofit beachboy concession stand #2. *Id*. at ¶ 72.   In 2011, Honolulu awarded a nonprofit concession, referred to in the FAC as "Beach Stand #3," located at the Kapahulu Groin, which is "approximately one-quarter mile away from the Healing Stones and Duke Statue."   *Id*. at ¶ 75.

In January 2011, Palekaiko's Acting Executive Director, Plaintiff Tom Copp (Copp), was cited for distributing a "commercial handbill" within KBP.   *Id*. at ¶ 74. Fearing arrest, Copp subsequently stopped handbilling within KBP.   *Id*.   In July 2019, though, Copp was cited for peddling without a permit within KBP.   *Id*. at ¶ 85.   In November 2019, he was fined $100 for this offense.   *Id*.   According to the Complaint, unidentified members of Palekaiko have been cited for "handbilling" and are "presently scared" to do so "on the beach."   *Id*. at ¶ 43.

In December 2017, Honolulu solicited bids for two for-profit concessions at KBP.   *Id*. at ¶ 76.   In May 2018, the winning bidder, Dive Oahu, commenced a contract for two for-profit and two "auxiliary" stands.   *Id*.   Since 2018, only Dive Oahu has operated concessions at the "cultural heart" of Waikiki.   *Id*. at ¶ 78.

In April 2018, Honolulu issued a solicitation for "nonprofit concession stand #3."   *Id*. at ¶ 77.   However, in November 2018, Honolulu cancelled the same "in

the best interests of the City, due to the ambiguity in the requirements and specifications." *Id*. (quotation omitted).

On January 2, 2020, Honolulu awarded a revocable permit under HRS Section 102-2(b)(7) to Pacific Island Beachboys, a nonprofit organization, for one year. *Id*. at ¶ 79. Honolulu did so without following the framework of ROH Section 28-3.3(e) and without public notice or a call for applicants. *Id*. at ¶¶ 33-34, 79. This concession is located far from the Healing Stones and Duke Statue. *Id*. at ¶ 79. On December 16, 2021, Honolulu renewed the permit granted to Pacific Island Beachboys under HRS Section 102-2(b)(7). *Id*. at ¶ 81. Only Dive Oahu and Pacific Island Beachboys are currently operating at KBP. *Id*. at ¶ 82.

At some point, after the Governor of Hawai'i declared a "health emergency" on March 5, 2020 due to the coronavirus, Honolulu decided to postpone a solicitation for the nonprofit stand at KBP. *Id*. at ¶¶ 38, 80. To date, Honolulu has not offered another solicitation for a nonprofit beachboy concession under Section 28-3.3(e). *Id*. at ¶ 82.

## II.   **Summary Judgment Facts**

To meet the demand by locals and tourists for certain beach-related services in Waikiki, Honolulu engages private contractors to provide "beach boy" services at KBP. Defendant's Concise Statement of Facts (DCSF) at ¶ 3, Dkt. No. 33; Plaintiffs' Concise Statement of Facts in Opp. to the DCSF (PCSF) at ¶ 3, Dkt. No.

40.   These fee-generating "beach boy" services include, *inter alia*, renting beach-related equipment, providing surf lessons and canoe rides, taking photographs of patrons, and offering mini-locker rentals.   DCSF at ¶ 4; PCSF at ¶ 4.

There are three "City Beach Stand Concessions" in Waikiki.   DCSF at ¶ 6; PCSF at ¶ 6.   Two are awarded without restriction as to whether the awardee is a for-profit or nonprofit entity.   The remaining concession is set aside for award to a qualified beach service association dedicated to the preservation of the Hawaiʻi beachboy tradition, incorporated as a nonprofit corporation under state law, and whose members are licensed or certified as required by law.   *Id.*

The most recent decision making on the number and placement of nonprofit beach stands occurred in 1999 and, in 2007, with the dismantling of a stand.   DCSF at ¶ 7; PCSF at ¶ 7.   In placing concessions on Honolulu park land, Defendant seeks to limit the type and amount of commercial activity in KBP in order to preserve open and available spaces for the public to engage in recreational and leisure activities and to otherwise benefit the public.   Decl. of Christopher Ching (Ching Decl.) at ¶ 4, Dkt. No. 33-1.   Honolulu has placed beach stands in designated areas and spaced them apart to allow for the public's access to large open spaces in the park and to discourage hawking of potential customers in an undesirable manner.   *Id.*[2]

---

[2] In the PCSF, Plaintiffs deny in part Defendant's factual statements related to the placement of concessions at KBP.   *See* Dkt. No. 40 at ¶¶ 8-9.   However, as with many of Plaintiffs' purported factual disputes in the PCSF, the opposing statements they make and/or the evidence to which they cite do not dispute the statement made by Defendant.   For example, whether or not Plaintiffs'

According to Christopher Ching (Ching), the Concessions Contracts Specialist for Honolulu's Department of Enterprise Services, temporary revocable permits are generally used between contracts to ensure the continuity of services and other benefits to the public while relevant law is complied with to award a concession contract.   Ching Decl. at ¶¶ 1, 5.   Also according to Ching, after the last solicitation for a nonprofit beach stand at KBP was cancelled in November 2018, the nonprofit beach stand remained vacant until January 7, 2020, while Honolulu personnel worked on a new solicitation.   *Id.* at ¶ 6.   Because of the "lengthy" vacancy in the nonprofit beach stand, a temporary permit, revocable on notice of 30 days or less and with a term no longer than 6 months, was issued on January 7, 2020 to Pacific Island Beachboys to operate the nonprofit beach stand.   *Id.*[3]   Each revocable permit issued to Pacific Island Beachboys has been for 6 months to 1 year in length and is always revocable upon notice of 30 days or less.   Ching Decl. at ¶ 8.

---

commercial and noncommercial speech is intertwined, *see id* at ¶ 8, is irrelevant to how and why Defendant places concessions at KBP.

[3]In the PCSF, Plaintiffs deny in part Defendant's factual statements concerning the use of temporary permits, citing, *inter alia*, "Exhibit 3" to the PCSF.   *See* Dkt. No. 40 at ¶¶ 10-12. Contrary to Plaintiffs' apparent belief, however, Exhibit 3 does not dispute or otherwise contradict the Defendant's factual statements.   Rather, if anything, the exhibit, an intra-department letter between Honolulu personnel, *supports* the factual statement that Defendant, at least from January 2020, has used temporary revocable permits to provide a nonprofit beachboy stand at KBP.   *See* Dkt. No. 40-4 (asking for 12-month revocable permits to be "prioritize[d]" because "a non-profit beachboy stand is required to continue to provide beach services to the public.").

In March 2020, a "COVID health emergency" was declared and all of Honolulu's concessions were ordered to cease operations until further notice. DCSF at ¶ 13; PCSF at ¶ 13.[4]

## PROCEDURAL BACKGROUND

Plaintiffs Palekaiko and Copp (collectively, Plaintiffs) initiated this action with the filing of the Complaint on December 20, 2021.   Dkt. No. 1.   On March 10, 2022, the Court dismissed the Complaint in part with leave to amend (March 10, 2022 Order).   Dkt. No. 27.   Specifically, except in one instance, the Court dismissed all claims as untimely because they had been brought more than two years after their accrual.   Plaintiffs, however, were allowed leave to amend those claims because it was "possible" to cure the identified deficiencies.   *Id*. at 11, 14.   The only claim that the Court found to be timely was Plaintiffs' free speech claim premised upon the issuance of revocable permits under HRS Section 102-2(b)(7) because this claim accrued within two years of filing the Complaint.   *Id*. at 10 n.1.[5]

---

[4]The Court notes that, at the end of the PCSF, Plaintiffs include additional purported facts, presumably pursuant to Local Rule 56.1(e).   *See* Local Rule 56.1(e) ("The opposing party shall also assert, in a separate section of its concise statement, any additional facts the party believes the court should consider….").   The additions, however, are not factual statements.   Instead, they take the form of questions, and legal questions at that.   *See* Dkt. No. 40 at 7 (¶¶ 1-4).   Because this is improper, the Court does not include Plaintiffs' questions in the Factual Background herein. *See* Local Rule 56.1(e) (requiring the assertion of "facts").
[5]The Court declined to address the substantive merit of this claim, however, because Honolulu failed to address the same until its reply brief.   *See* Dkt. No. 27 at 10 n.1.

On March 31, 2022, Plaintiffs filed the FAC, alleging claims against Honolulu under the Free Speech Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment.   Dkt. No. 31.

On April 20, 2022, Honolulu filed a motion to dismiss or, alternatively, for summary judgment (motion), along with a concise statement of facts.   Dkt. Nos. 32-33.   After scheduling the motion for hearing, Dkt. No. 35, Plaintiffs filed an opposition and a concise statement of facts.   Dkt. Nos. 39-40.   Honolulu then filed a reply and a response statement of facts, Dkt. Nos. 41-42, and, after vacating the hearing, Dkt. No. 43, this Order now follows.

## DISCUSSION

For the reasons set forth below, to the extent the FAC still alleges claims that accrued more than two years before filing this case, those claims are untimely.   The Court begins by addressing those potential claims.   The Court then addresses the merits of Plaintiffs' remaining claim concerning the issuance of revocable permits under HRS Section 102-2(b)(7).

## I.    Time-Barred Claims

As discussed in the March 10, 2022 Order, the vast majority of the factual allegations alleged in the Complaint were untimely as standalone claims, whether premised upon free speech, equal protection, or due process.   This is because, as alleged, they all occurred more than two years before the filing of the Complaint

and, thus, were untimely under applicable law.   Dkt. No. 27 at 9.   With this in mind, even a cursory comparison of the factual allegations set forth in the March 10, 2022 Order (*id*. at 2-6) with those set forth above in Section I of the Factual Background reflects that very little has changed in the FAC.   In fact, the *factual* allegations are largely unchanged.   To the extent there is additional factual embellishment on the matter of time, it concerns Plaintiffs' claim premised upon HRS Section 102-2(b)(7), such as the allegation that Honolulu renewed Pacific Island Beachboys' revocable permit on December 16, 2021.   This is true even of Plaintiffs' allegation that Honolulu postponed solicitations for the nonprofit beach stand after the declaration of a health emergency in March 2020, given that this also relates to the issuance of permits under HRS Section 102-2(b)(7).

To the extent there was doubt in this regard, Plaintiffs dispel much of it in their opposition to the motion.   Specifically, Plaintiffs emphasize that "events from the past" are "*not included*" as claims in the FAC.   Dkt. No. 39 at 11 (emphasis in original).   The Court agrees to the extent that, if the FAC can still be construed as raising any such claim, all claims premised upon events that occurred before December 20, 2019 are time-barred.   The practical meaning of this is as follows. Plaintiffs' free speech claims, except for the claim premised upon HRS Section 102-2(b)(7), and equal protection claims are untimely.   This includes Plaintiffs' free speech claim that Defendant has imposed "mandatory minimum qualifications"

and a lottery when issuing solicitations for the nonprofit beach stand under Section

28-3.3(e) because, as even Plaintiffs appear to acknowledge, those matters have not

occurred (if at all) for more than two years.   It also includes Plaintiffs' claims that

Honolulu's peddling ordinances violate their constitutional rights and Honolulu

unequally enforces its rules pertaining to nonprofit organizations because, similarly,

as alleged, the peddling ordinances and unequal rule enforcement have not occurred

for more than two years.[6]   Moreover, although Plaintiffs to some extent address the

purported timeliness of their claims in their opposition, they fail to explain (or even

mention) why their equal-protection or peddling-ordinance claims should be

considered timely.   *See id*. at 8-12.   In light of the Court's discussion of these

claims in the March 10, 2022 Order, *see* Dkt. No. 27 at 10, 11 n.3, 12-14, the fact

that the allegations related to these claims have not changed in terms of when they

accrued, and the absence of any intervening change in the law, these claims remain

untimely.   Further, because the Court has already granted leave to amend these

claims on the ground that they are untimely, all claims premised upon events that

occurred before December 20, 2019 are DISMISSED without leave to amend.

That being said, as Plaintiffs appear to recognize in their opposition, Dkt. No.

39 at 11, while events that occurred before December 20, 2019 cannot form an

---

[6]Further, as the Court explained in the March 10, 2022 Order, to the extent the continuing violations doctrine still exists in the Ninth Circuit, it does not apply to Plaintiffs' claims related to the peddling ordinances.   *See* Dkt. No. 27 at 10-11 & n.3.

actionable claim, they <u>can</u> be used as "background evidence" in support of their timely claim concerning Honolulu's use of HRS Section 102-2(b)(7).   *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).   The Court discusses that claim below.

## II.   <u>Plaintiffs' HRS Section 102-2(b)(7) Claim</u>

Defendant argues that it is entitled to summary judgment with respect to this claim for various reasons.   First, Defendant contends that Plaintiffs' speech is a form of commercial speech and is, thus, entitled to "less protection" under a test set forth by the U.S. Supreme Court in *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980).   Dkt. No. 32-1 at 11-12.   Second, Defendant argues that HRS Section 102-2(b)(7) satisfies the *Central Hudson* test because (i) it has a substantial interest in providing "continuity of services" at KBP between contracts for nonprofit beach stand concessions, and (ii) it is "drawn to achieve" that interest as Honolulu can revoke a temporary permit upon notice of 30 days.   *Id*. at 15-17.

Plaintiffs argue otherwise.   According to Plaintiffs, their speech is not "purely" commercial and, thus, is entitled to a "higher standard" of protection for "fully protected" speech.   Dkt. No. 39 at 16-17.   Plaintiffs then explain why HRS Section 102-2(b)(7) purportedly fails this "higher standard" of protection.   *Id*. at 18. In other words, in their opposition, Plaintiffs do not address the test set forth in

*Central Hudson*.   For that matter, however, in its motion and reply, Defendant does not address the "higher standard" of protection Plaintiffs contend has been violated.

In this light, the initial matter that must be addressed is the level of scrutiny to be applied to Plaintiffs' claim against HRS Section 102-2(b)(7).   As the parties acknowledge, to answer that question requires answering another: whether Plaintiffs' speech is commercial or not.   The test for identifying commercial speech is whether the speech in question "propose[s] a commercial transaction."   *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 473-474 (1989).   According to Plaintiffs, here, they seek to provide "educational programs and services" at KBP related to "traditional Hawaiian water sports," such as surfing.   Decl. of Thomas J. Copp (Copp Decl.) at ¶ 5, Dkt. No. 40-1.   Plaintiffs argue that these programs and services include "distributing educational and informative reading materials, soliciting and signing up memberships, requesting charitable donations, and by giving away and/or selling message-bearing merchandise."   Dkt. No. 39 at 17. Construed in the light most favorable to Plaintiffs, as the non-movants here, the aforementioned activities appear to propose both commercial transactions—selling message-bearing merchandise—and non-commercial transactions—distributing

educational materials.[7]   In other words, Plaintiffs' acknowledged speech involves both commercial and non-commercial aspects.

Plaintiffs argue that, in this situation, the entirety of their speech is entitled to a "higher standard" of protection because the commercial and non-commercial components are "inextricably intertwined…."   Dkt. No. 39 at 16.   The Supreme Court has explained that, in this context, "inextricably intertwined" means that "the nature of things requires" the commercial and non-commercial messages to be combined.   *Fox*, 492 U.S. at 474.   For example, "[n]o law of man or of nature makes it impossible to sell housewares without teaching home economics, or to teach home economics without selling housewares."   *Id*.   In this light, the Court disagrees that Plaintiffs' commercial and non-commercial speech is "inextricably intertwined" and, thus, entitled to protection greater than that provided in *Central Hudson*.   Notably, there is simply no evidence that Plaintiffs are *required* to combine their commercial and non-commercial messages.   Instead, the evidence points the other way, given that Defendant states that its regulations of KBP *only* concern commercial speech.   In other words, according to Defendant, its ordinances do not prohibit Plaintiffs from providing as many non-commercial, *i.e.*, unpaid, educational programs as they wish to provide or provisioning as many non-commercial water sport activities, such as surfing, as they wish.   *See* Dkt. No.

---

[7]In construing the facts in the light most favorable to Plaintiffs, the Court construes "distributing" as not involving a commercial transaction.

32-1 at 14-15.   Plaintiffs are free to do those things yesterday, today, and tomorrow. As a result, the Court finds that Plaintiffs' speech is subject to the *Central Hudson* test for commercial speech, as the only form sought to be regulated by Honolulu. *See Fox*, 492 U.S. at 474 ("Nothing in the resolution prevents the speaker from conveying, or the audiences from hearing, these noncommercial messages….").

*Central Hudson* sets forth the following test for commercial speech: (1) the speech must concern lawful activity and not be misleading; and (2) the government interest in regulating the speech must be substantial.   *Cent. Hudson*, 447 U.S. at 566.   If both of the foregoing inquiries yield positive results, the test further requires (3) the governmental regulation to directly advance the interest asserted, and (4) the governmental regulation to not be more extensive than necessary to serve that interest.   *Id*.   With respect to the third and fourth parts of the test, the Ninth Circuit has explained that they "involve a consideration of the 'fit' between the legislature's ends and the means chosen to accomplish those ends."   *Contest Promotions, LLC v. City & Cty. of San Francisco*, 874 F.3d 597, 602 (9th Cir. 2017) (quotation omitted). As the party seeking to regulate commercial speech, here, it is Defendant's burden to establish that the *Central Hudson* test has been established.   *Desert Outdoor Advertising, Inc. v. City of Moreno Valley*, 103 F.3d 814, 819 (9th Cir. 1996).

Here, it is unnecessary to assess each part of the *Central Hudson* test because the Court finds that, with the evidence presently submitted at this early stage of the

case, at the very least, Defendant has failed to establish, when the evidence is construed in the light most favorable to Plaintiffs, that its stated interest here is substantial or that HRS Section 102-2(b)(7) is a reasonable fit to achieve the same.

First, substantial interest.   Defendant asserts that its interest in employing temporary revocable permits is to "ensure continuity of services" between contracts for the nonprofit beach stand at KBP.   Dkt. No. 32-1 at 15-16.   Other than simply saying that the foregoing interest is substantial, however, Defendant provides no explanation for why.   This is problematic, in light of the evidence in this case. Notably, the evidence reflects that, at the very least, from November 2018 until January 2020, the nonprofit beach stand "remained vacant…."   DCSF at ¶ 11.   In other words, construed in the light most favorable to Plaintiffs, from November 2018 until January 2020, "continuity of services" was apparently not an interest of Honolulu, let alone a substantial one.[8]   *Cf. Rubin v. Coors Brewing Co.*, 514 U.S. 476, 486 (1995) (concluding that a government interest was not substantial where nothing was offered to suggest a "need" for the interest asserted).   Further, to the extent Defendant's assertion−that it was "working on the new solicitation" for the nonprofit beach stand during this time period−is meant to be an excuse for this period of discontinuity, it hardly answers the relevant question of why its asserted interest is substantial.

---

[8]If Plaintiffs are to be believed, the nonprofit beach stand stood vacant from October 2017, Copp Decl. at ¶ 13, an even longer period of inattention to Honolulu's so-called substantial interest.

Second, the fit of HRS Section 102-2(b)(7) to Defendant's interest.   Here, Defendant argues that there is a reasonable fit between HRS Section 102-2(b)(7) and its asserted interest because a permit issued under the former can be revoked in 30 days and, thus, the same is "drawn to achieve" the goal of continuing beach services between nonprofit beach stand contracts.   Dkt. No. 32-1 at 16-17.   Construed in the light most favorable to Plaintiffs, however, the Court disagrees that the facts show HRS Section 102-2(b)(7) is "drawn to achieve" any such interest.   Notably, in defending its actions, Defendant focuses solely upon the fact that, because a permit under HRS Section 102-2(b)(7) may be revoked in 30 days, the contract for a nonprofit beach stand could commence thereafter.   *See* Dkt. No. 32-1 at 16-17.   In doing so, though, Defendant ignores the point of its stated interest: to continue the *services* that were provided before.   Here, those services are nonprofit beach stand services.   Moreover, arguably, those services are ones provided pursuant to contracts issued under Section 28-3.3(e), *i.e.*, services provided by a nonprofit beachboy association "dedicated to the preservation of the Hawaii beach boy tradition…."   *See* ROH § 28-3.3(e).   Here, though, there is no evidence that HRS Section 102-2(b)(7) is "drawn to achieve" the provision of nonprofit beach stand services, let alone to ensure that those services are provided by a nonprofit beachboy association dedicated to the preservation of the Hawaii beach boy tradition.[9]

---

[9]For example, other than an entity being willing to accept a permit revocable upon 30 days' notice,

Rather, based upon the current record, which is silent on this matter, it would appear that HRS Section 102-2(b)(7) is drawn to achieve none of those things.   Therefore, the Court finds that, on this record, HRS Section 102-2(b)(7) is not a "reasonable fit between the ends and the means" here.   *See Contest Promotions*, 874 F.3d at 602.

For these reasons, Defendant is not entitled to summary judgment (or dismissal) of Plaintiffs' free speech claim premised upon HRS Section 102-2(b)(7).

## <u>CONCLUSION</u>

To the extent set forth herein, the motion to dismiss or, alternatively, for summary judgment, Dkt. No. 32, is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

Dated: July 22, 2022 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

there is no evidence of the criteria (if any) Honolulu uses to award a permit under HRS Section 102-2(b)(7).